IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENELL CAVER,<br><br>    Plaintiff,<br><br>    v.<br><br>E. CORTER, et al.,<br><br>    Defendants. | No. 2:23-CV-0018-WBS-DMC-P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

       Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgment arguing failure to exhaust administrative remedies prior to filing suit. See ECF No. 32. Plaintiff has filed an opposition. See ECF No. 34. Defendants have filed a reply. See ECF No. 35.

       The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See

///

1  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the
2  moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

2

1 court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.
2 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
3 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
4 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
5 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the
6 judge, not whether there is literally no evidence, but whether there is any upon which a jury could
7 properly proceed to find a verdict for the party producing it, upon whom the onus of proof is
8 imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A.     Plaintiff's Allegations

This action proceeds on Plaintiff's verified original complaint, filed on January 5, 2023.  See ECF No. 1.  Plaintiff names the following as defendants: (1) E. Corter, a correctional officer at California State Prison – Sacramento (CSP-Sac.); (2) D. Baker, a sergeant at CSP-Sac.; (3) J. Avila, a correctional officer at CSP-Sac.; (4) Vere, a correctional officer at CSP-Sac.; (5) M. Saeteurn, a correctional officer at CSP-Sac.; (6) A. Gonzalez, a sergeant at CSP-Sac.; and (7) J. Woods, a sergeant at CSP-Sac. See id. at 2.  Plaintiff claims that Defendants violated his rights under the Eighth Amendment while he was housed at CSP-Sac. See id. at 3.

Plaintiff states that on April 14, 2022, prison staff opened his cell door and told him to go to the rotunda to collect his belongings. See id. According to Plaintiff, Defendant Baker, Defendant Corter, and C.O.L Saelee were standing in the rotunda with boxes of his personal property. See id.

Plaintiff proceeded to put his property into his cell. See id. Plaintiff alleges that after putting one of three boxes into his cell, Defendant Baker stepped in front of him and asked, "what's with the angry body language?" See id. Plaintiff responded with "don't worry about it." See id. Plaintiff then contends that Defendant Baker directed Defendant Corter and C.O.L Saelee to "take back [Plaintiff's] property and put him in his cell." See id. Plaintiff alleges that Defendant Corter put him in handcuffs, slammed him into the concrete floor, and pressed his knee

3

into Plaintiff's back. See id., pg. 6.

Plaintiff then states that Defendant Avila, Vere, and Saeteurn ran into the building and picked him up off the floor. See id. Plaintiff alleges that the above-mentioned Defendants proceeded to slam him back on the concrete floor; knee him in the back, rib, and shoulder area; and press his face into the concrete floor. See id.

Plaintiff next contends that he was put in leg restraints and escorted to a holding cage, where his clothes were cut off with a pair of scissors. See id. Plaintiff alleges that while in the holding cage, his handcuffs and leg restraints cut off circulation to his hands and feet. Plaintiff contends that he was left naked in the holding cage for two hours. See id.

Plaintiff argues that Defendants Corter, Avila, Vere, and Saeteurn acted with "unreasonable, unnecessary and wanton excessive force" when they slammed Plaintiff on the concrete floor while handcuffed; kneed him in the back, rib, and shoulder area; and forced him into a holding cage without clothes for two hours. See ECF No. 1, pgs. 8-9. Plaintiff alleges that Defendant Baker violated his rights under the Eighth Amendment when he failed to intervene and prevent Defendant Corter from using excessive force. See id. Plaintiff also argues that Defendants Gonzales and Wood, violated his rights under the Eighth Amendment when they failed to intervene and prevent Defendants Avila, Vere, and Saeteurn from using excessive force.

As a result of this incident, Plaintiff alleges bruising, as well as back, neck, arm, and leg pain. See id., pg. 4. Plaintiff seeks compensatory and punitive damages. See id., pg. 11.

### B. Procedural History

On July 25, 2023, the Court issued an order directing service of Plaintiff's complaint. See ECF No. 11. All defendants – except Defendant Vere – waived service and filed their answer to Plaintiff's complaint on November 6, 2023. See ECF No. 19. Personal service by the United States Marshal was attempted on Defendant Vere, but not accomplished due to insufficient information to identify the defendant. See ECF No. 17. Plaintiff has not provided additional identification information and Defendant Vere remains unserved.[1]

---

[1] The Court will recommend dismissal of Defendant Vere for failure to effect timely service of process as required by Federal Rule of Civil Procedure 4(m).

1          On February 8, 2024, the Court issued a discovery and scheduling order, permitting the parties to conduct discovery through October 7, 2024, with dispositive motions due to be filed within 120 days after this date.  See ECF No. 28.  Defendants filed the currently pending motion for summary judgment based on lack of exhaustion on April 2, 2024.  See ECF NO. 32.  Plaintiff filed an opposition on April 11, 2024.  See ECF No. 34.  Defendants filed their reply brief on April 26, 2024.  See ECF No. 35.  On Defendants' motion, the schedule for this case imposed on February 8, 2024, has been suspended and discovery has been stayed pending resolution of Defendants' motion for summary judgment.  See ECF No. 36.

## II.  THE PARTIES' EVIDENCE

### A.    **Defendants' Evidence**

Defendants' motion for summary judgment is supported by a memorandum of points and authorities, ECF No. 32-2, a separate statement of undisputed facts, ECF No. 32-1, as well as the declarations of D. Contreras, E. Moseley, and P. Williams, and exhibits attached thereto, ECF Nos. 32-3, 32-4, and 32-5.

According to Defendants, the following facts related to exhaustion of administrative remedies are undisputed:

> 12.    Plaintiff submitted multiple grievances to SAC's OOG [Office of Grievances] and the OOA [Office of Appeals] between April 14, 2022, when Plaintiff's allegations first giving rise to his lawsuit occurred, through January 5, 2023, when Plaintiff filed his complaint. Contreras Decl. ¶8, Exhibit A; Moseley Decl. ¶7, Exhibit A.
>
> 13.    Plaintiff submitted one related grievance during the relevant time frame - Grievance Log Number 269163. He also submitted one relevant grievance outside [after] the relevant time frame –Grievance Log Number 354757/356726. Contreras Decl. ¶¶11-14, Exhibits B-C.
>
> 14.    In Grievance Log Number 269163, Plaintiff expressed dissatisfaction with the guilty finding in RVR log number 7175162 and stated he was "appealing the ruling." He alleged that Corter "lied about what happened and fabricated the RVR to cover up his use of excessive force." He further alleged that the Senior Hearing Officer (SHO) gave him three loss[es] of privileges while he could only take two. Plaintiff requested these issues be investigated and included a copy of the RVR. SAC received this grievance on June 17, 2022. Because Plaintiff's grievance concerned an allegation of staff misconduct, the SAC OOG referred it outside the grievance process and deemed it exhausted on June

24, 2022. The grievance did not contain any specific allegations regarding the alleged excessive force and focused on the RVR. Plaintiff took no further action regarding this grievance.  Contreras Decl. ¶12; Exhibit B; Moseley Decl. ¶7, Exhibit A.

15. In Grievance Log Number 354757, Plaintiff alleged that on April 14, 2022, Sergeant Baker ordered him to return to his cell. Officer Corter ordered Plaintiff to "cuff-up," and Plaintiff complied. Corter then slammed Plaintiff to the ground face first, kneed him in the back, and pressed his face into the concrete floor. Officers Avila, Vere, and Saeteurn and Sergeants Gonzalez and Woods then ran into the building. Saeteurn and Yang then picked Plaintiff up and then all four officers slammed Plaintiff back on the ground and began kneeing him in the back, rib, and shoulder area and pressing his face into the floor. Plaintiff was then placed in leg restraints, the officers cut off his clothes, and he was placed naked in a holding cell for two hours. Plaintiff requested that the alleged excessive force incident be investigated. Plaintiff dated the grievance "4-15-22." A close review of this date shows Plaintiff initially dated it "1-15-23" but then went back over the date and attempted to back date it to "4-15-22." He included a letter to the California State Prison, Calipatria grievance office (where he was housed at the time) asking them to forward his grievance to SAC. California State Prison, Calipatria received this grievance on January 19, 2023, and forwarded it to SAC. SAC then re-assigned the grievance log number 356726. Because Plaintiff made an allegation of staff misconduct, SAC referred the grievance for investigation outside the grievance process and deemed the grievance exhausted on January 28, 2023. Plaintiff took no further action regarding this grievance. Contreras Decl. ¶14, Exhibit C; Cal. Cal. Code of Regs., tit. 15, § 3483 (g)(8); Moseley Decl. ¶7, Exhibit A.

16. Plaintiff also submitted various unrelated grievances and appeals during the relevant time frame. Contreras Decl. ¶15; ¶¶16-22, Exhibits D-J; Moseley Decl. ¶7, Exhibit A; ¶¶ 10-12, Exhibits B-D.

17. Plaintiff did not submit any other appeals or grievances, related or unrelated to the allegations in his Complaint, during the relevant time frame beyond the ones provided. Contreras Decl. ¶23; *see also* ¶8, Exhibit A; Moseley Decl. ¶7, Exhibit A; ¶¶ 10-12, Exhibits B-D.

ECF No. 32-1.

B. **Plaintiff's Evidence**

Plaintiff has not filed a separate statement of disputed facts but has attached as Exhibit A to his opposition a copy of an inmate grievance (form CDCR 602-1), dated June 5, 2022. See ECF No. 34, pgs. 5-6.  In this document, Plaintiff stated: "On 4-15-22 I filed a 602 [inmate grievance] about a [sic] excessive force incident that happened on 4-14-22 and I haven't received a response." Id. at 5.  In addition to this exhibit, the Court will also consider Plaintiff's verified complaint as his declaration.

6

### III.  DISCUSSION

In their motion for summary judgment, Defendant argue that they are entitled to judgment in their favor as a matter of law because Plaintiff failed to exhaust available remedies prior to filing suit.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The defendant bears burden of showing non-exhaustion in the first instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate.  See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.   548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the

quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94. When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

Until June 1, 2020, California allowed inmates to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs., tit. 15, § 3084.1(a); Munoz v. Cal. Dep't of Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020). CDCR used a three-step process for grievances. Id. (describing the former three-step process). CDCR also used the three-step process for health care grievances until September 1, 2017. Id. CDCR then adopted a new two-step procedure for inmate grievances (which was renumbered to its current section number in 2018). See Cal. Code Regs., tit. 15, § 3999.225–.230; see also Singh v. Nicolas, No. 18-cv-1852, 2019 WL 2142105 at *3 & nn. 1–4 (E.D. Cal. May 16, 2019) (discussing the restructured grievance procedure); Garrett v. Finander, 2019 WL 7879659, at *2–3 (C.D. Cal. Dec. 5, 2019) (describing the new grievance procedures). The first level of review is the institutional level of review. Cal. Code Regs., tit. 15, § 3999.228(a). The second level of review is the headquarters level of review. Cal. Code Regs., tit. 15, § 3999.230(a). The headquarters level is the final level of health care grievance review. Cal. Code Regs., tit. 15, § 3999.230(h). The headquarters level decision also exhausts administrative remedies. Id.

"[T]he PLRA exhaustion requirement is satisfied if prison officials decide a potentially procedurally flawed grievance on the merits." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016). "[W]hen prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion have been served." Id. at 657.

In this case, the undisputed evidence shows that two grievances are at issue – (1) Grievance Log Number 269163; and (2) Grievance Log Number 354757/356726.  See Contreras Decl. ¶¶11-14, Exhibits B-C.  Defendants contend that neither exhausted Plaintiff's claims in this case.  The Court does not agree.

### A. Grievance Log Number 269163

Grievance Log Number 269163 was received by prison officials on June 17, 2022, referred as a staff complaint outside the grievance process, and deemed exhausted on June 24, 2022.  See Contreras Decl. ¶12; Exhibit B; Moseley Decl. ¶7, Exhibit A.  In this grievance, Plaintiff complained that a Rules Violation Report had been fabricated to cover up the use of excessive force.  See id.

Defendants contend that Grievance Log Number 269163 was procedurally defective in that it fails to satisfy the PLRA's exhaustion requirement because it did not put the institution on notice of Plaintiff's claims by specifically mentioning the alleged use of excessive force at issue in this action.  According to Defendants:

> Here, Plaintiff failed to place the institution on notice of his excessive force and failure to intervene claims in Grievance Log Number 269163, as this grievance concerned his related RVR and sought redress related to the RVR. (DUF 14.) For remedies to be fully exhausted, an appeal must "alert the prison to a problem and facilitate its resolution." *Griffin v. Arpaio*, 557 F.3d at 1120 (concluding that a prisoner's grievance cannot serve to exhaust administrative remedies where it fails to " 'alert[ ] the prison to the nature of the wrong for which redress is sought' ") (citation omitted). This grievance did not provide adequate notice to prison officials of the Plaintiff's claims against Defendants because he focused the grievance on his related RVR, not the use of force incident. *See, e.g., Baker v. Villalobos,* No. 2:18-CV-02301-PA-GJS, 2021 WL 6804237, at *4 (C.D. Cal. Sept. 29, 2021), report and recommendation adopted, No. 2:18-CV-2301 PA GJS, 2022 WL 326132 (C.D. Cal. Feb. 1, 2022), aff'd, No. 22-55198, 2023 WL 5608985 (9th Cir. Aug. 30, 2023) (holding that grievance of RVR did not exhaust excessive force and deliberate indifference claims); *Jones v. Lowder*, No. 1:16-cv-01911-AWI-SAB-PC, 2019 WL 1870457, at *3 (E.D. Cal. Apr. 18, 2018) (holding that a grievance complaining of a false RVR was inadequate to put prison officials on notice of an equal protection issue because it did not complain of racial discrimination); *see also Blair v. Viss*, No. 2:22-CV-0670 KJM DB P, 2023 WL 5673103, at *5 (E.D. Cal. Sept. 1, 2023), report and recommendation adopted, No. 2:22-CV-00670 KJM DB P, 2023 WL 8023859 (E.D. Cal. Nov. 20, 2023) (Plaintiff failed to exhaust

///

9

>retaliation claim when he failed to adequately raise it with his excessive force claim).

ECF No. 32-2, pgs. 9-10.

Defendants' argument is unpersuasive. While Grievance Log Number 269163 seems to primarily relate to Plaintiff's claim that the RVR guilty finding was flawed, the Court observes that underlying Plaintiff's claim is his assertion that the RVR process was used to cover up the use of excessive force alleged in this action. The Court finds that this was sufficient to put the institution on notice of the excessive force claims at issue in this case. See Griffin, 557 F.3d at 1120; Sapp, 623 F.3d at 824. Moreover, to the extent Grievance Log Number 269163 was procedurally defective for failing to make specific reference to the alleged use of excessive force, the undisputed evidence shows that the institution nonetheless processed the grievance as a staff complaint and deemed it exhausted. Because the institution resolved the grievance notwithstanding any procedural defect, the PLRA's exhaustion requirement would be considered satisfied. See Reyes, 810 F.3d at 657.

These conclusions are supported by evidence showing that the grievance was processed as a staff complaint outside the grievance process, possibly due to the allegations of use of excessive force by prison officials. At a minimum, there appears to be a genuine dispute of material fact as to why Grievance Log Number 269163 was processed as a staff complaint. If it was due to the allegations of excessive force, then the grievance would have put the institution on notice of Plaintiff's claims. Because the evidence before the Court shows either that the institution was put on notice by referring Plaintiff's grievance as a staff complaint due to the excessive force allegation, or that there is a genuine dispute of material fact as to this question, the Court finds that Defendants have not met their burden on summary judgment of showing the non-existence of a dispute of material fact as to Grievance Log Number 269163.

///
///
///
///

      **B.**      <u>Grievance Log Number 354757/356726</u>

The undisputed evidence shows that Grievance Log Number 354757 includes Plaintiff's specific allegations of excessive force asserted in this action. See Contreras Decl. ¶14, Exhibit C; Moseley Decl. ¶7, Exhibit A. The grievance was first received at California State Prison – Calipatria on January 19, 2023 – 14 days after this action was filed on January 5, 2023 – and forwarded to California State Prison – Sacramento, which processed the grievance as a staff complaint outside the grievance process and deemed it exhausted on January 28, 2023. See id.

Though the grievance clearly relates to the subject of this lawsuit, Defendants argue that it nonetheless fails to satisfy the PLRA because exhaustion occurred <u>after</u> suit was filed. According to Defendants:

> Here, Plaintiff filed suit on January 5, 2023. (DUF 2.) Two weeks later, he submitted the relevant grievance - 354757 / 356726. (DUF 15.) Rather than wait to file suit after completing the exhaustion process, Plaintiff chose to commence this lawsuit. (DUF 2, 15.) Plaintiff seemingly realized this error and attempted to backdate his grievance to change "1-15-23" to "4-15-22." (DUF 15.) However, there is evidence that this grievance was not submitted on April 15, 2022, and instead prepared and submitted on or about January 19, 2023. First, a close inspection of the date on the grievance shows that "4-15-22" has been written over "1-15-23." (*Id.*) Second, the grievance is marked received on January 19, 2023, by California State Prison, Calipatria. (*Id.*) Third, Plaintiff included a letter with the grievance asking Calipatria to forward the grievance to SAC. (*Id.*) Plaintiff did not transfer from SAC to Calipatria until November 29, 2022; well after the April 15, 2022, date. (DUF 5.) Plaintiff could not have been housed at Calipatria, and thus could not have requested they forward his grievance to SAC on the backdated April 15, 2022, date.
>
> ECF No. 32-2, pgs. 8-9.

This argument is also unpersuasive. While there is evidence that Plaintiff attempted to cure a procedural defect in his grievance by attempting to back-date it to a time prior to filing suit, there is also evidence before the Court suggesting otherwise. Specifically, in his opposition brief, which the Court accepts as Plaintiff's declaration, Plaintiff states that he originally submitted this grievance regarding use of excessive force on April 14, 2022, prior to filing suit while he was still housed at California State Prison – Sacramento, but that he never received any response. See ECF No. 34. Plaintiff further states that he resubmitted the grievance following his transfer to California State Prison – Calipatria, a contention Defendants' evidence

11

supports. In evaluating Defendants' motion for summary judgment, the Court is required to believe Plaintiff's evidence and to draw any reasonable inferences in Plaintiff's favor. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587. Consistent with this standard, the Court finds that as to the issue of whether Plaintiff timely submitted a grievance, there exists a question of material facts as to which there are genuine disputes, and as such, summary judgement is not appropriate here.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant Vere be dismissed for failure to effect timely service of process.
2. Defendants' motion for summary judgment, ECF No. 32, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 4, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE